IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SANDRA STASHER                                                                          PLAINTIFF

VS.                                    CIVIL ACTION NUMBER 3:21 - cv - 00099 - HTW - LGI

CITY OF JACKSON, MISSISSIPPI;
CHIEF JAMES DAVIS, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY;
JOHN DOES 1 THROUGH 10                                                              DEFENDANTS

PLAINTIFF'S MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFF'S
RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW Sandra Stasher ( i.e. hereinafter referred to as "Plaintiff" in the instant "Plaintiff's Memorandum Brief In Support Of Plaintiff's Response In Opposition To Defendants' Motion For Summary Judgment" ), by and through counsel, and submits this her Plaintiff's Memorandum Brief In Support Of Plaintiff's Response In Opposition To Defendants' Motion For Summary Judgment [ E.C.F. Document Number 41 ].  Plaintiff would further state that City Of Jackson, Mississippi shall hereinafter be individually referred to as "Defendant City" and Chief James Davis, Individually And In His Official Capacity shall hereinafter be individually referred to as "Defendant Chief."  Plaintiff further states that City Of Jackson, Mississippi and Chief James Davis, Individually And In His Official Capacity shall hereinafter be collectively referred to as "Defendants."  Plaintiff would further state that in support thereof, she would respectfully show unto this Honorable Court the following, to wit:

    1.    That the Court has jurisdiction over the parties and the subject matter herein.

I. INTRODUCTION

2. That on or about June 22, 2018, Plaintiff initiated her grievance. Plaintiff stated that she had been subjected to harassment and discrimination by "Defendant Chief" and that same had culminated to a hostile work environment. Plaintiff averred that "Defendant Chief" refused to accept memorandums from her subordinates via their chain - of - command. However, Plaintiff averred that "Defendant Chief" accepted memorandums from the male deputy chiefs. ( See Exhibit "A" ).

3. That Plaintiff averred that during a certain staff meeting that commenced on or about June 18, 2018, "Defendant Chief" reiterated that memorandums from her office should come from her ( i.e. Plaintiff ) as opposed to her subordinates. ( See Exhibit "A" ).

4. That Plaintiff avers that subsequent to the conclusion of the June 18, 2018 meeting, at approximately 11:05 a.m., she received a telephone call from "Defendant Chief's" administrative assistant representing that "Defendant Chief" wanted to see her ( i.e. Plaintiff ) in his office. Upon arrival, "Defendant Chief" returned four ( 4 ) memorandums. One ( 1 ) such memorandum was returned because "Defendant Chief" stated that Plaintiff failed to provide a finding. In response, Plaintiff advised "Defendant Chief" that she did not have enough evidence to render a finding and that her recommendation was to forward the information to the Internal Affairs Division. However, "Defendant Chief" refused to accept the certain memorandum. ( See Exhibit "A" ).

5. That Plaintiff avers that within ours of the afore referenced meeting, she received an e - mail correspondence from "Defendant Chief's" administrative assistant stating that "Defendant Chief" was requesting an updated Vehicle Inventory List, accounting for ALL vehicles assigned to the police department by Monday, June 25, 2018. Plaintiff avers that "Defendant Chief" was well aware that such deadline WAS NOT attainable. ( See Exhibit "A" ).

6. That Plaintiff also averred that during a certain staff meeting that occurred on or about June 4, 2018, Deputy Chief Wade ( i.e. who is a man ) advised her that they ( i.e. Plaintiff and Deputy Chief Wade ) had items on the City Council Agenda.  Deputy Wade advised that his commanders ( Commander Stephen Wells and Commander Herman Horton ) would be present at the City Council meeting to handle any questions or concerns as it related to his respective agenda items.  Plaintiff avers that she advised "Defendant Chief" that Commander Jaye Coleman would be available for her agenda item.  However, "Defendant Chief" advised Plaintiff that she was REQUIRED to be there because she ( i.e. Plaintiff, who is a woman ) was the chief deputy over support services.  However, Deputy Wade ( i.e. who is a man ), who is the chief deputy of Administration was NOT REQUIRED to attend.  ( See Exhibit "A" ).

7. That Plaintiff avers that she was not meeting with Wilma Jones - Scott, because the investigation performed by Toya Martin was insufficient.

8. That Plaintiff advised Wilma Jones - Scott that she had filed a grievance against "Defendant Chief" on June 22, 2018 and that "Defendants" did not provide a response until on or about July 25, 2018.  Plaintiff averred that Toya Martin closed the investigation based on a certain memorandum from "Defendant Chief" that was dated June 20, 2018, which was prior to Plaintiff submitting her grievance.  That Plaintiff advised Wilma Jones - Scott that when she ( i.e. Wilma Jones - Scott ) was willing to entertain a partial ( sic - should be impartial ) and thorough investigation, that she ( i.e. Plaintiff ) would consider meeting with her.  ( See Exhibit "D" ).

9. That Plaintiff also averred that absent conducting an investigation into her complaint to include statements of the former deputy chiefs, a meeting would not be productive.  ( See Exhibit "G" ).

10. That Plaintiff averred that on or about Friday, July 13, 2018, she wad demoted by Commander Vincent Grizzell. Plaintiff avers that Commander Grizzell is a man and he is less qualified. Plaintiff also avers that Commander Grizzell was not required to fulfill all the duties of a deputy chief. ( See Exhibit "D" ). That Plaintiff avers that Commander Grizzell ( i.e. now Deputy Chief Grizzell ) DOES NOT attend the required meetings. ( See Exhibit "D" ).

11. That Plaintiff avers that on or about July 24, 2018, she was advised that her seniority as a lieutenant would be determined by a frivolous General Order that was outdated and unsigned. Said order was used to allow a male lieutenant to claim seniority over her. Inn response, Plaintiff advised General Order 300 - 1, Section B states as follows, to wit:

> After an officer has successfully completed all areas of the training curriculum, successfully graduated the training academy and has been sworn in, his / her seniority shall become effective immediately. Seniority for a promoted rank is determined by the date of promotion. The seniority for an experienced sworn officer begins on the date of hire.

That in Section F of the afore referenced Order, its states as follows:

> If a conflict arises between officers or a promoted rank who have the same time in grade, seniority shall be determined by the officer's date of employment. When two or more employees have the same tenure, promotional date and / or date of employment, seniority shall be determined by alphabetical order of their legal surname at time of hire.

12. That Plaintiff avers that Commander Freeman stated that Section F, not Section B, would be used to determine seniority between her and Lieutenant White. However, Section F is only applicable in the event that a conflict arises. ( See Exhibit "F" ).

13. That Plaintiff avers that no conflict exists. Plaintiff avers that her time as a Lieutenant was initiated in December 2014 when she was promoted and served as Lieutenant over Major Investigations. Plaintiff avers that Lieutenant White's time in grade as a Lieutenant did not commence until he was assigned as a lieutenant in the Patrol Division in January of 2018. As such, Plaintiff and Lieutenant White do not have the same time in grade thus the date of employment can not be used to determine seniority. ( See Exhibit "D" ).

14. That Plaintiff avers that while she and Lieutenant White have the same promotional date, seniority is to be determined by alphabetical order of their present surnames. Thus, Plaintiff's surname begins with "S" which comes before "W." Despite this policy, Plaintiff was NOT given the opportunity to exercise her shift preference, nor was she given the opportunity of a new car assignment.

## II.  FACTS

15. That on or about June 22, 2018, Plaintiff filed an internal grievance against "Defendant Chief" alleging Sex Discrimination, Retaliation and Harassment. Such unlawful actions against Plaintiff occurred over a course of several months and continued after the filing of Plaintiff's grievance. ( See Exhibit "E" ).

16. That "Defendant Chief's" actions resulted in both a hostile work environment and the constructive termination of Plaintiff's employment with "Defendant City."

17. That Plaintiff timely filed her grievance with "Defendant City."

18. That pursuant to "Defendant City's" Grievance Policy, she was to receive an "answer" within five ( 5 ) days of filing same. However, Plaintiff did not receive an "answer" until on or about July 25, 2018. ( See Exhibit "B" ).

19. That "Defendant City" closed Plaintiff's complaint based on a "back - dated" memorandum that was provided by "Defendant Chief" that was alleged to have been received by all deputy chiefs prior to Plaintiff filing her grievance. That said "back - dated" memorandum was provided to falsely imply that same was received by Plaintiff and the other male deputy chiefs prior to the filing of Plaintiff's grievance and to imply that Plaintiff was treated in the same manner as the male deputy chiefs.

20. That Plaintiff advised "Defendant City" that the afore referenced memorandum WAS NOT received by the deputy chiefs on June 20, 2018. Plaintiff and the other male deputy chiefs did not receive said memorandum until June 28, 2022, which was actually six ( 6 ) days after she filed her grievance.

21. That Plaintiff was advised that said memorandum was communicated to all deputy chiefs via e - mail correspondence. However, Defendants have failed to provide the "original" e - mail correspondence to substantiate such representation. ( See Exhibit "C" ).

22. That on or about July 13, 2018, "Defendant Chief" disabled Plaintiff's computer access to "Defendant City's" network. Subsequent thereto, "Defendant Chief" had all of Plaintiff's documents removed and copied from the city computer that had been assigned to her. Although the male deputy chiefs' computers were also disabled, the male deputy chiefs were provided advanced notice and given the opportunity to "consent" to their computers being accessed. The male deputy chiefs were later given immediate access to their computers and continued their assignments without interruption. Plaintiff, however, did not receive access and was instead, forced to perform limited work on her personal laptop.

23. That on this same day, Plaintiff was demoted and replaced with a black male. However, the new male employee did not receive all the duties that Plaintiff was required to perform prior to her illegal demotion. Of the seven ( 7 ) divisions and various employees assigned to Plaintiff, the newly appointed male deputy chief was ONLY RESPONSIBLE FOR ONE ( 1 ) division which consisted of one ( 1 ) employee. The remainder of Plaintiff's divisions and duties were added to female deputy chiefs who already had existing duties.

24. That after being demoted, Plaintiff was reassigned to the Patrol Division.

25. That on or about July 24, 2018, Plaintiff was notified that she would not be allowed to exercise her seniority. To justify "this" Defendants provided her with a frivolous and outdated General Order that gave a white male employee seniority over her.

26. That Plaintiff was forced to resign.

27. That since Plaintiff's resignation, all three ( 3 ) former male deputy chiefs have been promoted.

### III.   SUMMARY JUDGMENT STANDARD OF REVIEW

28. Summary judgment is warranted under the applicable provisions of Federal Rules Of Civil Procedure Rule 56 ( a ) when evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 ( 1986 ).

29. The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions [ of the record ] which it believes demonstrate the absence of a genuine issue of material fact." Id at 323. The nonmoving party must then "go beyond the pleadings" and "designate ' specific facts showing that there is a genuine issue for trial.'" Id at 324. The non - movant must also "articulate the precise manner in which the submitted or identified evidence supports his or her claim." Smith ex rel. Estate Of Smith v. United States, 391 F.3d 621, 625 ( 5th Cir. 2004 ). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, " but only when .... both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp. 37 F.3d 1069, 1075 ( 5th Cir. 1994 ) ( per curiam ). In reviewing the record, a court mut "draw all reasonable inferences in favor of the nonmoving party, and .... may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 ( 2000 ); see Brown v. Bryan County, 219 F.3d 450, 456 ( 5th Cir. 2000 ). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. ( quoting Anderson v. Liberty Loby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 ( 1986 )).

30. The non - moving party is required to respond with specific proof demonstrating a triable issue of fact as to each of the elements required for establishment of the claim asserted. Washington v. Armstrong World, Indus., 839 F.2d 1121, 1122 - 23 ( 5th Cir. 1988 ). The court must resolve all reasonable doubts about the existence of a genuine issue of material fact against the movant. Byrd v. Roadway Express, Inc., 687 F.2d 85, 87 ( 5th Cir. 1982 ).

IV. ARGUMENT

**A.** **Sex Discrimination: Defendants ARE NOR entitled to summary judgment because there are genuine issues of material fact and Plaintiff can establish the prima facie elements of her sex discrimination claim**

31. Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's ..... race, color, religion, sex, or national origin." 42 U.S.C. Section 2000e - 2 ( a ) ( 1 ). To establish a claim of discrimination under Title VII, Plaintiff must show that some adverse action was taken against him, and that her protected status was at least a "motivating factor" in the action. 42 U.S.C. Section 2000e - 2 ( a ). This adverse action can take the form of lost pay or significantly changed working conditions, including hostile work environment. Thompson v. City Of Waco, Texas, 764 F. 3d 500 ( 5th Cir. 2014 ); Alvaredo v. Texas Rangers, 492 F. 3d 605, 614 ( 5th Cir. 2007 ); Ramsey v. Henderson, 286 F.3d 264, 268 ( 5th Cir. 2002 ) ( citations omitted ); see Harris v. Forklift Systems, 510 U.S. 17, 21 ( 1993 ). An adverse employment action is a "judicially - coined" term referring to an employment decision that affects the terms and conditions of employment. Thompson v. City Of Waco, 764 F.3d 500, 503 ( 5th Cir. 2014 )). In certain circumstances, a change in or loss of job responsibilities - similar to the transfer and reassignment contexts - may be significant and material that it rises to the level of an adverse employment action. Southard v. Texas Board Of Criminal Justice, 114 F.3d 539, 555 ( 5th Cir. 1997 )).

32. To maintain a discrimination claim, Plaintiff must first establish, by a preponderance of the evidence, a prima facie case of sex discrimination. To meet this burden, Plaintiff must prove that: ( 1 ) he is a member of a protected group or class; ( 2 ) he was qualified for the position; ( 3 ) he suffered an adverse employment action and ( 4 ) was replaced by someone outside the protected

class or that the position remained open. Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1087 (5th Cir. 1994); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Price v. Fed. Express Corp., 283 F.3d 715 (5th Cir. 2002).

33. That if the plaintiff establishes a prima facie case, the burden "shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." Alvarado v. Texas Rangers, 492 F.3d 65, 611 (5th Cir. 2007)). If the employer succeeds in doing so, the plaintiff can only prevail be establishing either: (1) the proffered reason is pretextual or (2) the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic." Id. at 611 (quoting Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004)).

34. That Plaintiff proved that she is a member of a protected group or class. There is no dispute that Plaintiff is an African American female.

35. That there is no dispute that Plaintiff was qualified for the position.

36. That Defendant produced no evidence demonstrating that Plaintiff's job performance failed to meet its expectations. In this regard, Defendant did not produce any written document, performance review, etc. that would support any such contention.

37. That there is no dispute that Plaintiff suffered an adverse employment action. That said adverse employment action is evidenced by her demotion from a Deputy Chief to a Lieutenant.

38. That Plaintiff demonstrated that her position was either replaced by someone outside her protected class and / or remained open. That Plaintiff was replaced by a male and that male employee was given less responsibilities than Plaintiff had when she occupied the position. Assuming arguendo that this element is not sufficiently shown, in Pivirotto v. Innovative Systems, Inc., 191 F.3d 344 (3rd Cir. 1999), the fourth element of a prima facie case of discrimination may be

shown by evidence "adequate to create an inference" of discrimination. While replacement by someone outside Plaintiff's protected class is sufficient to meet this requirement, it is not the only way to do so. The prima facie case clearly requires only evidence adequate to create an inference that an employment decision was based on illegal discriminatory criterion and is not limited to showing that the position was filled by a person not of the protected class. An employer's failure to hire someone of a different class from the Plaintiff, after the Plaintiff's discharge, could be explained in many ways. ( See Price Waterhouse v. Hopkins, 490 U.S. 228, 250, 109 S. Ct. 1775 ( 1989 ). Because a prima facie case only requires evidence adequate to create an inference that an employment decision was based on illegal criterion, replacement is neither legally nor logically required. ( Citing O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312, 116 S.Ct. 1307, 1310 ( 1996 ).

   39. That Plaintiff has demonstrated a prima facie case of discrimination in these premises.

   40. Once shown, a plaintiff's prima facie case creates an inference of discrimination. Once shown, the employer, at that time, is required to rebut same with a legitimate, non - discriminatory reason. At that point, the plaintiff is left with the burden of presenting evidence from which a reasonable trier of fact could infer discrimination. Rhodes v. Guiberson Oil Tools, 75 F.3d 989 ( 5th Cir. 1996 ). The employer, of course, will not be entitled to summary judgment if the evidence taken as a whole would not allow the jury to infer that the actual reason for the discharge was discriminatory. Id.

   41. That in Goudeau v. National Oilwell Varco, L.P., 793 F.3d 470 ( 5th Cir. 2015 ), the 5th Circuit stated that when an employer opts to have a disciplinary system that involves warnings ..... failure to follow that system may give rise to inferences of pretext. In Machinchik v. PB Power, Inc., 398 F.3d 345 ( 5th Cir. 2005 ), the 5th Circuit stated even the non - mandatory nature of

progressive discipline plan " did not eliminate the inference of pretext raised by the failure to follow an internal company policy specifically stating that it should be "followed in most circumstances."

### B. Race Discrimination: Defendants ARE NOT entitled to summary judgment because there are genuine issues of material fact and Plaintiff can establish the prima facie elements of her race discrimination claim

42. Plaintiff can show that she suffered an adverse employment action and that an individual outside her protected group was treated more favorably. Similar to sex discrimination clams, 42 U.S.C. Section 2000e - 2 ( a ) ( 1 ) prohibits an employer from discriminating against an employee based upon race. Likewise, To meet this burden, Plaintiff must prove that: ( 1 ) he is a member of a protected group or class; ( 2 ) he was qualified for the position; ( 3 ) he suffered an adverse employment action and ( 4 ) was replaced by someone outside the protected class or that the position remained open. Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1087 ( 5th Cir. 1994 ); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 ( 1993 ); Price v. Fed. Express Corp., 283 F.3d 715 ( 5th Cir. 2002 ). That if the plaintiff establishes a prima facie case, the burden "shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." Alvarado v. Texas Rangers, 492 F.3d 65, 611 ( 5th Cir. 2007 )). If the employer succeeds in doing so, the plaintiff can only prevail be establishing either: ( 1 ) the proffered reason is pretextual or ( 2 ) the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic." Id. at 611 ( quoting Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 ( 5th Cir. 2004 )).

43. That is no dispute that Plaintiff is an African American female, therefore, she is a member of a protected class. Also, Defendants have failed to produce any evidence that demonstrates that Plaintiff was NOT qualified for the position as Deputy Chief. Plaintiff avers that she suffered an adverse employment action when she was not allowed to exercise seniority over

Mr. White, who was a caucasian male, in determining shifts.

### C. Retaliation: Defendants' Motion For Summary Judgment should NOT be granted because Plaintiff CAN establish the prima facie elements of her retaliation claim

44. The first step in establishing a prima facie case for Title VII retaliation is demonstrating the existence of protected activity under Title VII. The anti - retaliation clause of Title VII provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of [ its ] employees ..... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. Section 2000e - 3 ( a ). To show that the activity was protected, the employee must have had "at lease a reasonable belief that the practices [ he ] opposed were unlawful." Long v. Eastfield College, 88 F.3d 304 ( 5th Cir. 1996 )).

45. That the United States Supreme Court has interpreted the scope of the opposition clause of Title VII's anti - retaliation provision quite broadly in favor of recovery. Crawford v. Metro Government Of Nashville & Davidson County, Tennessee, 555 U.S. 271, 279, 129 S.Ct. 846, 172 L. Ed. 2d 650 ( 2009 ). The United States Supreme Court, in Crawford, also cites McConnell when discussing the broad coverage of Title VII, where the Court found an employee to be covered by Title VII where his employer retaliated against him for failing to prevent his subordinate from filing an EEOC charge. McConnel v. Cisneros, 84 F.3d 256, 262 ( C.A. 7 1996 )).

46. The McDonnell Douglas burden - shifting framework also applies to retaliation claims. Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 ( 5th Cir. 2000 )). A plaintiff establishes a prima facie case of retaliation by adducing evidence that " ( 1 ) she participated in an

activity protected by Title VII; ( 2 ) her employer took an adverse employment action against [ her ]; and ( 3 ) a causal connection exists between the protected activity and the adverse employment action." McCoy, 492 F.3d 556 - 57.

47. That the causation element of a plaintiff's prima facie case may be proved by temporal proximity between the protected activity and the adverse employment action when they occur "very close" in time. Washburn v. Harvey, 504 F.3d 505, 511 ( 5th Cir. 2007 )). In Richard v. Cingular Wireless, LLC, 233 Fed. Appx. 334, 338 ( 5th Cir. 2007 ), the Court there found that the dates were less than two ( 2 ) months between the protected activity and the adverse employment action, which was short enough time to support an inference of a causal link. Close timing between an employee's protected activity and an adverse action against [ her ] may provide the 'causal connection' required to make out a prima facie case of retaliation. Swanson v. General Services Administration, 110 F.3d 1180, 1188 ( 5th Cir. 1997 )). In the case at bar, retaliation began immediately after Plaintiff filed her grievance.

48. That in the case at bar, there is no question, that filing a grievance demonstrated Plaintiff's participation in protected activity. Also, Plaintiff was demoted from a Deputy Chief position subsequent to the filing of her grievance. Plaintiff filed her grievance against "Defendant Chief" on or about June 22, 2018 and that "Defendants" did not provide a response until on or about July 25, 2018. The certain memorandum from "Defendant Chief" dated June 20, 2018, was "back - dated" in an effort to provide a legitimate non - discriminatory reason. Despite Plaintiff's request, Defendants have failed to provide "the original" e - mail correspondence that would support Defendants' contention ( s ) in these premises.

49.     That once Plaintiff establishes a prima facie case of retaliation, the defendant must then articulate a legitimate non - retaliatory reason for its employment action.  Here, in the case at bar, Defendant contend that other Deputy Chiefs were demoted.

50.     That a plaintiff may establish pretext by showing that the employer's proffered explanation is false or unworthy of credence.  Laxton v. Gap, Inc., 333 F.3d 572, 578 ( 5th Cir. 2003 )).  Pretext can also be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action.  Brown v. Wal - Mart Stores East, L.P., 969 F.3d 571, 578 ( 5th Cir. 2020 ).  In the case at bar, the memorandum "Defendant Chief" authored on or about June 20, 2018 was forwarded to Plaintiff on or about June 28, 2018, which was six ( 6 ) days after she filed her grievance.  Plaintiff avers that the June 20, 2018 from "Defendant Chief" was back dated, and thus doubt is cast in regards to the credence of said memorandum.

51.     Concerning adverse action, it is a far "less demanding standard" than it once was.  Porter v. Houma Terreboune 810 F.3d 940, 946 ( 5th Cir. 2015 )).  It includes not only actions affecting the terms and conditions of employment, nor even actions occurring at the workplace.  Burlington N. & Sfr Co. v. White, 548 U.S. 53 ( 2006 )).  It extends to "any action that 'might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  McCoy v. City Of Shreveport, 492 F.3d 551, 559 ( 5th Cir. 2007 )).

> **D.     Constructive discharge: A reasonable person in Plaintiff's position would find that her working conditions were so intolerable or unpleasant to cause her to resign; therefore Defendants' Motion For Summary Judgment SHOULD NOT be granted**

52.     That Plaintiff CAN establish her prima facie case for discrimination as well as retaliation.  As such, she CAN establish her claim ( s ) for constructive discharge.  In Pennsylvania State Police v. Suders, 542 U.S. 129, the United Supreme Court requires a plaintiff to prove that " ....

his working conditions were so intolerable that a reasonable employee would feel compelled to resign...." The 5th Circuit has cited seven ( 7 ) factors to support a constructive discharge claim, which include ( a ) demotion; ( b ) reduction in salary; ( c ) reduction in job responsibility; ( d ) reassignment to menial or degrading work; ( e ) reassignment to work under a younger supervisor; ( f ) badgering harassment or humiliation by the employer calculated to encourage the employee's resignation; or ( g ) offers of early retirement or continued employment on terms less favorable than employee's former status.

53. That in the case at bar, there is no dispute that Plaintiff was demoted.

**E.   Defendant's Motion For Summary Judgment should NOT be granted because Defendant Chief James Davis is NOT entitled to qualified immunity.**

54. That Plaintiff avers that Defendant Chief James Davis has waived his defense of qualified immunity under Section 1983. The applicable provisions of the "local rules", demonstrate that a motion asserting an immunity defense or a jurisdiction defense must be raised in a separate motion as expeditiously as practicable after service of process. See Local Rule 16 ( b ) ( 3 ) ( A ).

55. That in the case at bar, Defendant Chief James Davis filed his "Answer" on or about March 5, 2021. Certainly Defendant Chief James was served prior to March 5, 2021. However, even assuming that you use March 5, 2021 as the date that Defendant Chief James Davis was served with process, the pending Motion For Summary Judgment, where Defendant Chief James Davis asserts qualified immunity in May 2022, is not demonstrative of raising such defense as expeditiously as practicable after services of process. Therefore, Plaintiff contends that any such defense of qualified immunity is waived in these premises.

**F.      Plaintiff's Section 1983 claim against the City survives and Defendants' Motion For Summary Judgment SHOULD NOT be granted.**

56.     That Plaintiff avers that her Section 1983 claim survives summary judgment in these premises.  "Likewise, 'sex discrimination and sexual harassment in public employment violate the Equal Protection Clause Of The Fourteenth Amendment.'" Southard v. Texas Board Of Criminal Justice, 114 F.3d 539, 550 ( 5th Cir. 1997 )).  This has been well settled law in this Circuit since at least 1985.  Merwine v. Mississippi Board Of Trustees, 754 F.2d 631, 635 n.3 ( 5th Cir. 1985 )) see also Whiting v. Jackson State University, 616 F.2d 116, 121 ( 5th Cir. 1980 )).  The elements are essentially the same as in Title VII.  In contrast to Title VII, however, these claims can only be brought directly against the individual tortfeasor under Section 1983.  See Hafer v. Melo, 502 U.S. 21 ( 1991 )).

V.   CONCLUSION

57.     That Plaintiff has introduced evidence that would permit a reasonable jury to conclude that Plaintiff's sex caused the adverse employment action / termination.

Respectfully submitted, this the 24th day of June of 2022.

                              SANDRA STASHER, PLAINTIFF

                         BY:    /s/ Brandon I. Dorsey                              
                              BRANDON I. DORSEY, MSB # 100291
                              ATTORNEY FOR PLAINTIFF

OF COUNSEL:

BRANDON I. DORSEY, PLLC
POST OFFICE BOX 13427
JACKSON, MISSISSIPPI 39236 - 3427
TELEPHONE: ( 601 ) 969 - 6960
FACSIMILE: ( 601 ) 969 - 6959
E - MAIL: brandonlawpllc@aol.com

CERTIFICATE OF SERVICE

I, Brandon I. Dorsey, attorney for Plaintiff, do hereby certify that I have on this day caused to be served, via E.C.F., a true and correct copy of the above and foregoing document to the following person, to wit:

Sheridan Carr, Esquire
Claire Barker, Esquire
The Office Of The City Attorney - The City Of Jackson, Mississippi
Post Office Box 2779
Jackson, Mississippi 39207 - 2779

SO CERTIFIED, this the 24th day of June of 2022.

/s/ Brandon I. Dorsey
BRANDON I. DORSEY